UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sarah Bergman, Ken Bergman, Patricia Budnik, and Anthony Budnik,<br><br>    Plaintiffs,<br><br>v.<br><br>Johnson & Johnson and Ethicon, Inc.,<br><br>    Defendants. | Case No. 20-cv-2693 (JRT/JFD)<br><br>**ORDER ON DEFENDANTS' MOTION TO SEVER (DKT. NO. 40)** |

This matter is before the Court on Defendants' Motion to Sever (Dkt. No. 40). A hearing was held on Monday, September 13, 2021. Andrew Feldman, Esq., from Flint Law Firm, LLC, represented Plaintiffs, and Brandie L. Morgenroth, Esq., from Nilan Johnson Lewis PA represented Defendants. For the reasons set forth below, Defendants' Motion is granted.

**I.    Facts and Procedural History**

On November 17, 2003, at St. John's Hospital in Maplewood, Minnesota, Dr. Aaron Kirkemo implanted two pelvic mesh devices in Plaintiff Sarah Bergman to treat pelvic organ prolapse and stress urinary incontinence. (First Am. Compl. ¶ 2, Dkt. No. 18.) Dr. Kirkemo used Defendant Ethicon's Gynecare TVT and Gynecare PS. (*Id.*) Nearly five years later, on May 7, 2008, a different surgeon, Dr. Michael T. Valley, in a different hospital, Park-Nicollet Medical Center, implanted one pelvic mesh device in Plaintiff Patricia Budnik to treat pelvic organ prolapse. (*Id.* ¶ 6.) Dr. Valley used Defendant Ethicon's Gynecare Prolift pelvic mesh product. (*Id.*)

Following surgery, Plaintiff Bergman developed complications allegedly caused by Defendants' pelvic mesh device, including urinary tract infections, pelvic pain and pressure, dyspareunia, incomplete voiding, urgency, frequency, and nocturia. (*Id.* ¶ 3.) According to the oral arguments at the motion hearing, her pelvic mesh device was removed in a Florida medical facility by Dr. Christopher Walker in September of 2015.

Plaintiff Budnik also developed post-operative complications, also allegedly caused by Defendants' pelvic mesh products. Plaintiff Budnik suffered pelvic pain (but does not allege pelvic pain *and pressure*), bleeding (which Plaintiff Bergman does not claim to have suffered from), and two other complications that are shared with Plaintiff Bergman, namely, urinary tract infections and dyspareunia. (*Id.* ¶ 7.) According to the oral arguments, Plaintiff Budnik's pelvic mesh was removed at a Minnesota medical facility by Dr. Evan Griffiths in October of 2016.

On December 30, 2020, Plaintiffs Sarah and Ken Bergman filed, in a single Complaint together with Plaintiffs Patricia and Anthony Budnik, a products liability action, asserting numerous claims sounding in loss of consortium, negligence, breach of express and implied warranties, and strict liability against Defendants Johnson & Johnson and Ethicon, Inc., for their allegedly defective pelvic mesh products. (Compl., Dkt. No. 1.) Plaintiffs filed their operative First Amended Complaint ("FAC") on March 19, 2021. (Dkt. No. 18.)

Defendants moved to dismiss most of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. (Dkt. No. 22.) Chief Judge Tunheim granted Defendants' Motion to Dismiss in part. Plaintiffs'

2

surviving counts allege that Defendants negligently failed to adequately warn Plaintiffs and their health care providers of the risks posed by Defendants' pelvic mesh products (Count I), are strictly liable for failure to warn Plaintiffs and their physicians of these risks (Count VI), and are liable for loss of consortium (Count XIII). (Mem. & Order at 16–17, Dkt. No. 34.)

After Judge Tunheim's decision, Plaintiffs moved the Court for leave to file their Second Amended Complaint ("SAC"), which, they maintain, rectifies the factual pleading errors identified by the district court that led to the dismissal of some counts. (Dkt. No. 54) The proposed SAC also removes several counts which the district court found legally insupportable. (*See* Pls.' Mem. Supp. at 4, 6–8, Dkt. No. 56). The Court is issuing an Order on Plaintiffs' Motion for Leave to File their Second Amended Complaint simultaneously with this Order.

Defendants now move to sever the claims of the Bergman Plaintiffs from those of the Budnik Plaintiffs because "Plaintiffs' claims do not meet the standard for joinder." (Defs.' Mem. Supp. at 1, Dkt. No. 42.)

## II.    Legal Standard

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1)(A)–(B). The Eighth Circuit construes Rule 20's "same transaction and occurrence" language liberally, and "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction

or occurrence." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citing 7 C. Wright, *Federal Practice and Procedure* § 1653 at 270 (1972)).

However, the importance of efficiency cannot transform two cases into one where the diverse facts of a case fail to meet Rule 20's two specific requisites. *Mosley*, 497 F.2d at 1333. Courts have held that even where transactions are *similar*, they are not necessarily the *same*. *See Arcaro v. City of Anoka*, No. CV 13-2772 (JNE/LIB), 2014 WL 12605451, at *4 (D. Minn. July 16, 2014) (citing *Movie Systems, Inc. v. Abel*, 99 F.R.D. 129, 130 (D. Minn. 1983)). Rather, "'[t]o be part of the 'same transaction' requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts.'" *Id.* (citing *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012)).

Whether to sever is a question the Court decides by exercising its discretion to manage the cases before it: "On motion or on its own, the court *may* at any time, on just terms, add or drop a party. The court *may* also sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added). "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. . . . No hard and fast rules have been established under the rule." *Mosley*, 497 F.2d at 1333 (citation omitted).

### III. Discussion

Before reaching the question of whether the claims of the Bergman and Budnik Plaintiffs share a common question of law or fact, the Court will examine whether the Plaintiffs "assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A).

4

The claims here are similar but not the same. They involve different surgical procedures, performed by different surgeons, five years apart, in different hospitals, on different patients. (FAC ¶¶ 2, 6.) Both Plaintiffs developed a host of post-surgical complications, but out of the eight conditions developed by Ms. Bergman and the four developed by Ms. Budnik, only two—pelvic pain and dyspareunia—were suffered by both Ms. Budnik and Ms. Bergman. (*Id.* ¶¶ 3, 7.) Finally, according to the oral arguments, two pelvic mesh devices were removed from Plaintiff Bergman in Florida by Dr. Christopher Walker, and one pelvic mesh device was removed from Plaintiff Budnik in Minnesota by Dr. Evan Griffiths.

Because of these differences, the claims of the Bergman Plaintiffs and the claims of the Budnik Plaintiffs do not arise from a single transaction or occurrence. Fed. R. Civ. P. 20(a)(1)(A). One magistrate judge in this District has severed claims, in the context of a product liability action concerning a medical device, that had far more in common than the claims in the case at bar. *See Foster v. St. Jude Med., Inc.*, No. CV 04-135 RHK/AJB, 2005 WL 8164743, at *2 (D. Minn. Oct. 5, 2005) (severing claims, even though plaintiffs shared the same surgeon, and their operations were only one month, rather than five years, apart).

At oral argument, Plaintiffs argued that the common transaction or occurrence was the Defendants' marketing campaign for their pelvic mesh products. Assuming, for the sake of argument, that Plaintiffs are correct, the Court agrees with Defendants' counsel that the marketing of medical devices is a personal, doctor-by-doctor undertaking, adding yet another difference in the facts supporting the Bergman and Budnik Plaintiffs' respective claims. Furthermore, Plaintiffs' claim that the marketing campaign was the single

5

transaction required by Rule 20(a)(1)(A) places on Plaintiffs the burden of showing that interactions between Defendants' marketing personnel and Dr. Christopher Walker, and between Defendants' marketing personnel and Dr. Evan Griffiths were the same. Plaintiff did not attempt to do this, and therefore fail to meet their burden.

While it is true, as Plaintiffs pointed out at oral argument and in their written submissions, that all these products are made of polypropylene plastic, once woven into a mesh they become distinct devices. (Pls.' Mem. Opp'n at 7–8, Dkt. No. 46.) Plaintiff Bergman was implanted with Ethicon's Gynecare TVT and Gynecare PS, while Plaintiff Budnik was implanted with Ethicon's Gynecare Prolift. Defendants state that the products implanted into Plaintiffs Bergman and Budnik were not just differently named, they were differently treated by a regulatory agency. (Defs.' Mem. Supp. at 10–11.) The product used on Ms. Budnik has been discontinued and was categorized by the Food and Drug Administration as a Class III medical device, regulated under 21 C.F.R. § 884.5980, while the two products used on Ms. Bergman were categorized by the FDA as Class II medical devices, regulated under 21 C.F.R. § 878.3300.[1] *See* U.S. Food & Drug Admin., *Establishment Registration & Device Listing*, https://www.accessdata.fda.gov/

---

[1] While not discussed in the written filings of the parties nor at oral argument on this Motion, the Supreme Court has explained the difference in FDA regulatory classes. "The MDA [the 1976 Medical Device Amendments to the Food, Drug, and Cosmetic Act] separates devices into three categories: Class I devices are those that present no unreasonable risk of illness or injury and therefore require only general manufacturing controls; Class II devices are those possessing a greater potential dangerousness and thus warranting more stringent controls; Class III devices 'presen[t] a potential unreasonable risk of illness or injury' and therefore incur the FDA's strictest regulation. § 360c(a)(1)(C)(ii)(II)." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 344 (2001).

scripts/cdrh/cfdocs/cfRL/rl.cfm (Oct. 25, 2021); *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1006 (7th Cir. 2020) (discussing the history of Prolift's discontinuation). Although the defense did not further specify how great these regulatory differences are, the three pelvic mesh products at issue are in at least somewhat different regulatory environments. These regulatory distinctions further chip away at the likelihood that one can speak of a single, integrated marketing campaign tying together Plaintiffs' respective failure to warn claims.[2]

Therefore, because Plaintiffs' claims do not arise from a single transaction or occurrence, the inquiry ends, and the Court need not consider whether there are common questions of fact or law.

For all these reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Sever (Dkt. No. 40) is **GRANTED**, and pursuant to Rule 21 of the Federal Rules of Civil Procedure, the claims of Plaintiffs Sarah and Ken Bergman are hereby severed from the claims of Plaintiffs Patricia and Anthony Budnik. Within 14 days of the issuance of this Order, Plaintiffs must recast their complaint as two separate complaints. Plaintiffs Sarah and Ken Bergman's Amended Complaint will be docketed under the current case number (20-cv-2693-JRT-JFD). The Clerk of Court shall amend the caption of this action to reflect

---

[2] The same is true for the design defect and fraud-based claims that Plaintiffs moved to add to their complaint in their Motion for Leave to File Their Second Amended Complaint (Dkt. No. 54). It is difficult to see how one could speak of a marketing campaign serving as the single transaction or occurrence that allows two separate claims for design defects—and the fraudulent concealment of those defects—for three different devices regulated under two different regulatory regimes, all tied together in a single complaint.

7

that Sarah and Ken Bergman are the proceeding Plaintiffs. The Bergmans shall file their Amended Complaint as required by this Court's contemporaneously docketed Order on the Plaintiffs' Motion for Leave to Amend Their First Amended Complaint. (Dkt. No. 70.) Plaintiffs Patricia and Anthony Budnik shall proceed, upon the payment of the requisite filing fee, to file a separate action in this Court. The Budniks shall file a Complaint that conforms with this Court's simultaneously filed Order on Plaintiffs' Motion for Leave to Amend Their First Amended Complaint. (Dkt. No. 70). Defendants will have 14 days in which to file a responsive pleading upon the filing of each of the recast complaints.

Dated: October 29, 2021                    *s/ John F. Docherty*
                                           John F. Docherty
                                           United States Magistrate Judge